REGAN, Judge.
Plaintiff, George A. Styron, a mechanic employed by Hubert Fabacher, doing business as the Victory Truck Line, and their *114 insurer, Protective Indemnity Company,[1] instituted this suit against the defendants, Raymond Ralph; doing business as the United Transportation Service, his employee, Claude Smith,[2] and their insurer, American Casualty Company, endeavoring to recover the respective sums of $8,900, representing personal injuries incurred when Styron lost part of his left thumb as a result of an accident which occurred on November 8, 1946, and $1,089.67, representing workmen’s compensation and medical expenses which the insurer paid to Styron.
Defendants answered and in substance denied that they were guilty of any negligence in the premises and in the alternative pleaded the contributory negligence of Styron.
Raymond Ralph was engaged in a business the nature of which required the use of heavy automobile equipment. One of the principal parts of his occupation was the raising or towing of disabled vehicles, including fallen semi-trailers.
Fabacher was engaged in the trucking business with headquarters at 3003 Jackson Avenue, New Orleans, part of which consisted of a large concrete paved yard used for parking, loading, and unloading of the trucks, tractors, and semi-trailers operated by him.
On November 8, 1946, the front end of a semi-trailer heavily loaded with paper fell in the yard, the concrete surface of which at that time was littered with dirt and gravel,[3] which had been deposited thereon by the many vehicles that were serviced in the yard. This semi-trailer had to be raised in order that it could be attached to a tractor. A winch truck was required for the raising thereof. Ralph’s organization had performed this work on many occasions for Fabacher; so he telephoned Ralph to dispatch a crew and the equipment to raise the trailer. Ralph sent Claude Smith, a winch truck, and a helper to the yard. The truck’s cable operated by the winch was steel; it appears that the mechanics of raising a trailer consisted of working a sling under the front end thereof, wrapping that sling once around the king pin, bringing it up on each side of the trailer, making it fast to the steel cable, elevating the front end by use of the winch, inserting barrels or horses under the sides of the trailer, then lowering it thereon, and thus leaving it elevated for subsequent use by the owner.
When Smith arrived at the yard, he found the front end of the trailer embedded in the dirt hereinabove referred to, which made it difficult to insert the sling under the side edges of the trailer. While preliminary arrangements were being made to raise the trailer, Fabacher and Styron were standing nearby observing the operation. Styron’s employment consisted of maintaining, repairing, and servicing all of the equipment. In the final analysis, his employer asserted that he “bossed the yard.” Neither Fabacher nor Styron informed Smith or his helper that the trailer which they were preparing to raise had sharp edges which could cut the sling.
When the trailer had been elevated and was supported by the sling, Smith called for barrels which were to be placed by him and his helper under the sides of the trailer. Fabacher and Styron, hearing this, pro- *115 procured barrels, and Smith began placing them under one side of the trailer, exercising the precaution of not permitting any part of his body to get directly under the frailer in the event that it should fall. When Smith had placed two barrels on one side of the trailer, Styron, without any request or order from Smith, voluntarily placed a barrel under the other side of the trailer; and while he was in the act thereof, the trailer fell and crushed Styron’s left thumb.
After the accident occurred the factors which could have played a part in it were examined, and it was ascertained that the sling was in good condition when the operation began and that the fifth wheel plate of the trailer was sharp, which was caused by the friction of fifth wheel thereon. Styron admitted that he knew the plate was sharp and that he had not called it to the attention of Smith or his helper. They insisted that they could not have learned of this fact themselves because that part of the trailer was embedded in dirt when the operation was initiated. The only reasonable conclusion that can be drawn from all of the evidence is that the sharp fifth wheel plate cut the sling, causing the trailer to fall.
The trial judge obviously found as a fact that the defendant was guilty of primary negligence but that “the plaintiff * * * was guilty of such contributory negligence as bars his recovery * * * ”, and our examination of the record fails to disclose any legal or factual errors in this conclusion.
Styron was an expert mechanic in charge of the trailer that fell and injured him. He was fully aware of the sharp edges which, cut the sling; he was closely present and observed the entire operation without revealing this pertinent fact. These circumstances compel us to reason that the plaintiff was in a better position than anyone else to know of the danger and hazard inherent in the sharp edges of the trailer, and therefore when he failed to make this fact known to those who were engaged in the operation of elevating the trailer, his contributory negligence in the last analysis was the proximate or dominant cause of his injuries which were incurred when the trailer fell.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Protective Indemnity Company was merged into tlie Preferred Accident Insurance Company of New York on May 20, 1947. Ancillary receivership proceedings wore instituted in the State of Louisiana against the Preferred Accident Insurance Company of New York on May 1, 1951; and since Rufus D. Hayes, Commissioner of Insurance of the State of Louisiana, is the Ancillary Receiver of this company, ho was made a party to this suit on November 5, 1957.

. Smith was never served with citation and is therefore not a party defendant.

. The litigants disputed the condition of the surface of the yard. However, a fair evaluation of the evidence indicates that dirt had been deposited thereon by the vehicles which were garaged there.